**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION**

| | | |
|---|---|---|
| **MAURICIO WIOR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | **NO. 1:15-cv-02375-ELR** |
| | ) | |
| **BELLSOUTH CORPORATION,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR STAY OF ARBITRATION AND IN SUPPORT OF CROSS MOTION TO STAY LITIGATION AND COMPEL ARBITRATION

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................1

**LEGAL STANDARD** .....................................................................................5

**ARGUMENT** ..................................................................................................9

I.  THE COURT MUST STAY THE LITIGATION AND COMPEL
    ARBITRATION PURSUANT TO THE PARTIES' AGREEMENT .................9

    A. The Arbitrator and Not the Court has Jurisdiction to Decide Whether
    BellSouth's Breach of Contract Claim is Arbitrable in Light of Wior's
    Asserted Statute of Limitations Defense ...........................................9

    B. The Arbitrator and Not The Court Has Jurisdiction to Decide the Gateway
    Issue of Whether the Statute of Limitations Bars BellSouth's Request for
    Arbitration...................................................................................12

II. THERE IS NO APPLICABLE STATUTE OF LIMITATIONS ......................14

    A. The Statute of Limitations Applies only to "Actions" ...................14

    B. The GAC is Preempted by the FAA and AAA Rules ....................15

    C. Wior's Motion Relies on Cases that are Inapplicable ....................18

    D. The Second Circuit has Addressed Wior's Argument and Rejected it for the
    Equivalent New York Statute ........................................................20

III.EVEN IF THE GEORGIA ARBITRATION CODE APPLIES, THE COURT
    SHOULD EXERCISE ITS DISCRETION UNDER O.C.G.A § 9-9-5 TO
    DISREGARD THE STATUTE OF LIMITATIONS .........................................23

**CONCLUSION**...............................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfa Laval U.S. Treasury Inc. v. Natational Union Fire Insurance Co.*
*of Pittsburgh,*
857 F. Supp. 2d 404 (S.D.N.Y. 2012) ...............................................22

*Ashcroft v. Randel,*
391 F. Supp. 2d 1214 (N.D. Ga. 2005)...............................................23

*AT&T Techs., Inc. v. Commc'ns Workers of America,*
475 U.S. 643 (1986)..........................................................................8

*Bagwell v. City of Atlanta,*
109 F.R.D. 290 (N.D. Ga. 1985) .......................................................23

*Bechtel do Brasil Construcoes Ltda v. UEG Araucaria Ltda.,*
638 F.3d 150 (2d Cir. 2011) ...................................................20, 21, 22

*BG Group v. Republic of Argentina,*
134 S. Ct. 1198 (2014).............................................................9, 12, 13

*Contec Corp. v. Remote Solution Co.,*
398 F.3d 205 (2d Cir. 2005) .............................................................11

*Fallo v. High-Tech Inst.,*
559 F.3d 874 (8th Cir. 2009) ...........................................................11

*First Options v. Kaplan,*
514 U.S. 938 (1995).........................................................................10

*First Weber Group, Inc. v. Synergy Real Estate Group,*
LLC, 860 N.W.2d 498 (Wis. 2015) ....................................................13

*G.T. Leach Builders, LLC v. Sapphire V.P., LP,*
458 S.W.3d 502 (Tex. 2015) .............................................................13

*Hunter et al. v. Johnson*,
    376 S.E.2d 371 (Ga. 1989) .......................................................................17, 18

*Johnson v. Western & Southern Life Insurance*,
    598 Fed. App'x 454 (7th Cir. 2015) ....................................................13

*Lewiston Firefighters Ass'n v. City of Lewiston*,
    354 A.2d 154 (Me. 1976)...................................................................14

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
    173 Cal. App. 4th 1040 (Cal.App.2d Dist. 2009).............................14

*Mastrobuono* v. *Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995).......................................................................*passim*

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013)...............................................18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).............................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 ........................................................................................7, 8

*Panhandle Fire Prot., Inc. v. Batson Cook Co.*,
    653 S.E.2d 802 (Ga. App. 2007) ..............................................19, 20

*Peters v. Bentwater Yacht and Country Club, Ltd.*,
    2013 WL 2422657 (S.D. Tex. June 3, 2013)....................................13

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ............................................................11

*Preston v. Ferrer*,
    552 U.S. 346 (2008).....................................................................*passim*

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) .......................................................11

iii

*Skidmore, Owings & Merrill v. Conn. Gen. Life Ins. Co.*,
  197 A2.d 83 (Conn. 1963) .................................................................15

*Southland Corp v. Keating*,
  465 U.S. 1 (1984)..............................................................................7

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
  432 F.3d 1327 (11th Cir. 2005) ........................................................11

*Volt Infor. Scis. Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989)...................................................8, 18, 19, 20

**Statutes**

9 U.S.C. § 1 et seq..................................................................11, 12, 16

9 U.S.C. § 201 et seq.....................................................................*passim*

9 U.S.C. § 301 et seq.............................................................................7

NY CPLR § 7502.........................................................15, 20, 21, 22

O.C.G.A. § 9-9-5.................................................................................15, 21

O.C.G.A. § 9-3-24................................................................................14

**Treaties**

Organization of American States [OAS], *Inter-American Convention on
International Commercial Arbitration,  Jan. 30, 1975*
  1438 U.N.T.S. 245……………………………………………..………7

*United Nations Convention on the Recognition and Enforcement of Foreign
Arbitral Awards, June 10, 1958*
  21 U.S.T. 2517, 330 U.N.T.S. 38  ...........................................*passim*

Respondent BellSouth Corporation (n/k/a BellSouth, LLC) ("BellSouth") submits this Memorandum of Law in Opposition to Petitioner's Motion for Stay of Arbitration and Declaratory Relief (DKT # 13), and in support of its Cross Motion to Stay this Litigation and Compel Arbitration (DKT # 14), pursuant to the Federal Arbitration Act (the "FAA") and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").

## PRELIMINARY STATEMENT

BellSouth is a Georgia Corporation.  *See* Answer at ¶ 2.  Petitioner Mauricio Wior ("Petitioner" or "Wior") is a national of Argentina.  *See* Answer at ¶ 1.  Wior worked for various BellSouth affiliates and subsidiaries in Latin America for a number of years.  He was directly employed by BellSouth Southern Cone, Inc. ("BSC") in Argentina as its highest ranking officer at the time of his separation of employment on July 29, 2005.  BellSouth gave Wior more than one year's advance notice that his employment relationship would end as a result of BellSouth's sale of its Latin American interests, including BSC's operations in Argentina, to a third-party.  *See* Infinger Declaration attached hereto as Exhibit 1 at ¶ 2.  During that year, BellSouth offered Wior another position, which he declined.  *See* Bauzá Declaration attached hereto as Exhibit 2, Ex. A at Response 12.

1

After declining to stay with the company, Wior proceeded to aggressively negotiate with BellSouth's human resources department over an extended period of time, while represented by counsel, and ultimately received a very lucrative severance package.  *See* Infinger Declaration at ¶ 5; *see also* Bauzá Declaration, Ex. A at Response 12.  The final terms of the parties' severance agreement are set out in a Transition Agreement with BellSouth dated July 29, 2005 (*see* Complaint, Ex. C) and a Termination Agreement with BSC also dated July 29, 2005 in regard to Wior's employment in Argentina (*see* Infinger Declaration, Ex. A).

The Agreements each provided Wior with generous severance pay and benefits, including prorated performance shares, stock awards, and accelerated stock options.  *See* Infinger Declaration at ¶¶ 5, 8.  In exchange, Wior agreed to release any and all claims against BellSouth, BSC and all their affiliates related to his employment or severance of his employment, and agreed not to file suit over any released claim.  *See* Complaint, Ex. C; Infinger Declaration, Ex. A.  In August 2005, BellSouth paid Wior nearly $5 million in full compliance with its obligations under the Agreements.  *See* Butler Declaration attached hereto as Exhibit 3 at ¶ 3.  At Wior's request and insistence, all but $23,000 was paid into his bank account in the United States.  *Id.*

2

In order to make severance agreements valid and enforceable in Argentina, Argentine labor laws require either the Ministry of Labor or a court of law to formally approve the agreements so that they can achieve res judicata effect and eliminate an employer's exposure to future labor claims from the employee in Argentina. *See* Bauzá Declaration at ¶ 8. The usual practice is for the employer and employee to publicly register severance agreements with the Ministry of Labor. *Id.* at ¶¶ 7-8. BellSouth was prepared to do this, but Wior insisted he did not want to make the terms of his severance public because doing so would endanger him and his family, given the large sum of money involved. *Id.* at ¶¶ 5-6. Wior also refused to appear for the registration and, without his personal appearance, the process could not be completed. *Id.* at ¶¶ 5-9.

It is therefore Wior who attempted a second bite of the apple. Wior's alleged concerns about his and his family's safety were a ruse so that he could later file suit in an Argentine court to pursue more money from BellSouth. *Id.* at ¶¶ 9-10. And, while he argued to the Argentine Courts that the Transition and Termination Agreements should be voided, he kept all of the money he had been paid under those Agreements. Wior's plan was successful as he managed to convince the Argentine Courts that both Agreements are unenforceable under Argentine labor law and has been awarded $8.42 million more in severance. *Id.* at

¶ 10.   This award is almost entirely based on the Argentine Courts' refusal to enforce the Transition Agreement's express terms, because of the technicality that Wior intentionally created by refusing to register the Termination Agreement, and a failure to understand how to value stock options, as the Courts failed to subtract the strike price Wior would have been required to pay to exercise the additional awarded options.  *Id.*  Wior's lawsuit, filed on July 24, 2008, is currently pending before the Argentine *Corte Suprema de Justicia de la Nación* (the "Argentina action").  *See id.* at ¶ 4.

To vindicate its rights, BellSouth filed a Demand for Arbitration on June 1, 2015 for breach of the arbitration agreement,[1] release provision, covenant not to sue, and other provisions contained in the Transition Agreement (the "Arbitration") in connection with the Argentina action.  Wior filed the present Motion with this Court seeking a stay of the Arbitration on July 1, 2015.  The Court dismissed the Motion on July 21, 2015.  More than two months later, on October 1, 2015, Wior renewed his Motion on the basis of his incorrect assertion that the Arbitration is barred by Georgia's six-year statute of limitations for breach of contract actions.

---

[1] The arbitration agreement calls for arbitration of "[a]ny dispute, controversy or claim arising out of or relating to [the Transition Agreement], or the breach, termination or invalidity of any provision hereof" in Atlanta, GA.  *See* Complaint, Ex. C at § 14.

Wior has brought his Motion in the wrong forum: under controlling Supreme Court and Eleventh Circuit precedent, the Arbitrator and not the Court has jurisdiction to resolve all of the parties' disputes, including but not limited to the arbitrability of the issues presented in Wior's motion and the gateway issues relating to Wior's statute of limitations defense.

Moreover, even if these were issues for the Court, which they are not, Wior's statute of limitations defense fails because: (1) under the FAA and the American Arbitration Association Rules (the "AAA Rules"), which the parties expressly agreed would govern any arbitration, there is no statute of limitations; and (2) contrary to Wior's argument, the parties have not incorporated into their agreement the statute of limitations provisions of the Georgia Arbitration Code ("GAC").  Thus, even if the Court did have the authority to reach the merits of the statute of limitations defense, the Court should still reject the defense.

The court should deny Wior's Motion and instead stay this litigation and compel arbitration.  In the alternative, the Court should deny Petitioner's Motion and dismiss this lawsuit.

## **LEGAL STANDARD**

This case is governed by the New York Convention and its implementing legislation, Chapter II of the FAA, because both the United States of America and

the Republic of Argentina are contracting states to the New York Convention. Pursuant to Article II of the New York Convention, the treaty confers the following substantive rights:

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen, or which may arise between them . . . [and] [t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration  …."

*United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.  The New York Convention is implemented in the United States by Chapter II of the FAA.  9 U.S.C. § 201.  Moreover, an "action" in Court or a "proceeding"[2] in arbitration that falls under the New York Convention (*i.e.,* that is international rather than domestic) arises under federal rather than state law:

> An *action* or *proceeding* falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States.

9 U.S.C. § 203 (emphasis added).

---

[2] As discussed more fully below, the term "action" refers to litigation in court and the term "proceeding" refers to arbitration.  The distinction is especially important to Wior's arguments because, as discussed infra in Section II.A., statutes of limitations generally only apply to "actions".

Next, pursuant to 9 U.S.C. § 208, Chapter I of the FAA has residual application, meaning that Sections 3 (setting forth the procedure governing motions to stay litigation) and 4 (setting forth the procedure governing motions to compel arbitration) apply.[3]

Lastly, "Congress [has] declared a national policy favoring arbitration." *See Southland Corp v. Keating*, 465 U.S. 1, 10 (1984). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted). This heavy presumption in favor of arbitration applies with "special force in the field of international commerce." *Id.* at 631. *See also Moses H. Cone Mem'l Hosp. v.*

---

[3] The United States of America and Argentina are also parties to the Inter-American Convention on International Commercial Arbitration (the "Panama Convention"), which also relates to the enforcement of international arbitration agreements and awards and which is implemented in the United States via Chapter III of the FAA. Organization of American States [OAS], *Inter-American Convention on International Commercial Arbitration*, Jan. 30, 1975, 1438 U.N.T.S. 245. BellSouth reserves all of its rights under the Panama Convention and/or under Chapter III of the FAA. The extent to which the Panama Convention may apply to this dispute is, however, irrelevant, because Chapter III of the FAA incorporates all of the relevant provisions of Chapters I and II of the FAA. Specifically, BellSouth relies on Sections 3, 4, 202, and 203 of the FAA. Each of these provisions is equally applicable to Panama Convention disputes under Chapter III of the FAA pursuant to 9 U.S.C. §§ 302 and 307.

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Mastrobuono* v. *Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 (1995) quoting *Volt Infor. Scis. Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."). This is particularly true here because the parties agreed to arbitrate all disputes "arising out of or relating to" the Transition Agreement. *See* Complaint, Ex. C at § 14. This is a classic broad-form arbitration clause requiring arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986). Thus, all doubts must be resolved in favor of arbitration.

## ARGUMENT

### I. THE COURT MUST STAY THE LITIGATION AND COMPEL ARBITRATION PURSUANT TO THE PARTIES' AGREEMENT

The Supreme Court divides challenges to an arbitrator's jurisdiction into two distinct categories. The first consists of disputes about "arbitrability." "These include questions such as whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *BG Group v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) (citations and internal quotations omitted). The second consists of procedural "gateway" defenses to arbitration. "These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.' And they include the satisfaction of 'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Id.* at 1207 (citations and internal quotations omitted). Wior's Motion raises both arbitrability issues and gateway defenses to arbitration. Under controlling Supreme Court and Eleventh Circuit precedents, the arbitrator, not the Court, decides all of them.

### A. The Arbitrator and Not the Court has Jurisdiction to Decide Whether BellSouth's Breach of Contract Claim is Arbitrable in Light of Wior's Asserted Statute of Limitations Defense

The parties have a threshold dispute over whether the Court or the Arbitrator has jurisdiction to resolve whether BellSouth's breach of contract claim can

proceed in arbitration in light of Wior's asserted statute of limitations defense. This is the classic "who decides," or "arbitrability" question.  *See id.* at 1206-7.

Here, the parties expressly agreed to arbitrate all disputes "arising out of or relating to" the Transition Agreement.  *See* Complaint, Ex. C at § 14.   BellSouth commenced arbitration pursuant to this provision to arbitrate Wior's breach of various provisions of the Transition Agreement.  *See* Complaint, Ex. A.  Wior does not dispute that he was a party to a binding arbitration provision or that BellSouth's claim squarely falls within in it, instead he seeks to have this Court excuse his contractual obligation to arbitrate on the basis of a statute limitations defense.  He is asking the wrong decision maker for relief.

The parties clearly and unmistakably agreed that the Arbitrator and not the Court would decide arbitrability when they incorporated the AAA Rules in their arbitration agreement.  *See* Complaint, Ex. C at § 14.  Rule 7(a) of the AAA Rules states:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Complaint, Ex. D, Rule R-7(a).  Thus, while the default rule is that the Court will decide arbitrability,  *First Options v. Kaplan*, 514 U.S. 938, 942 (1995), the parties opted out of the default rule when they adopted the AAA Rules.

Every Circuit Court of Appeals that has considered the issue, including the Eleventh Circuit, has held that the incorporation of institutional rules, such as the AAA Rules, that grant the arbitrator the authority to decide his own jurisdiction, constitutes the necessary clear and unmistakable evidence to override the default rule. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) ("By incorporating the AAA Rules . . . the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"); *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Accordingly, Wior has commenced suit in this Court on an issue that is subject to a binding agreement to arbitrate.  Pursuant to Section 3 of the FAA, this Court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3. Moreover, on BellSouth's motion, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9

11

U.S.C. § 4.  The Court should grant BellSouth's cross-motion and enter an order staying this litigation and compelling arbitration.

**B.    The Arbitrator and Not The Court Has Jurisdiction to Decide the Gateway Issue of Whether the Statute of Limitations Bars BellSouth's Request for Arbitration**

The second issue is whether the Court or the Arbitrator has jurisdiction to decide the merits of Wior's statute of limitations defense.  This presents a "gateway" or procedural challenge to arbitration under *BG Group.*

The general rule is that the Arbitrator rather than the Court must resolve any procedural or gateway defenses to arbitration.  In *BG Group*, the issue was whether BG Group was required to litigate its claims in an Argentine court for a period of time before it could commence arbitration in the United States.  *See BG Group v. Republic of Argentina*, 134 S. Ct. 1198 (2014).  After noting the sharp distinction between questions of "arbitrability," and "procedural preconditions for the use of arbitration," *id.* at 1202, the Court performed a broad survey of prior Supreme Court precedents holding that claims of "waiver, delay, or a like defense to arbitrability," and other "prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate" are all for the arbitrator.  *Id.* at 1207 (citations omitted).  The Court then easily concluded that the provision at issue in *BG Group* "is of the latter, procedural variety" for the

arbitrator to decide because "[i]t determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all."  *Id.*

Lower courts applying *BG Group* agree:  questions of timeliness are for the arbitrator and not the court.  *Johnson v. Western & Southern Life Insurance*, 598 Fed. App'x 454, 456 (7th Cir. 2015) (district court "improperly ruled" when it concluded that the plaintiff was "time-barred" from pursuing arbitration as that matter is "presumptively reserved for the arbitrator"); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015) (internal citations omitted) (a limitations deadline "imposes a procedural limit on the parties' rights under that agreement" and "bears on the arbitrators' final disposition" of claims); *First Weber Group, Inc. v. Synergy Real Estate Group*, LLC, 860 N.W.2d 498, 502-503 (Wis. 2015) (timeliness and estoppel defenses against arbitration are procedural arbitrability issues to be determined during the arbitration process rather than by a court).  This makes sense because the statute of limitations does not operate to extinguish a contractual right; it merely operates to foreclose one procedural avenue to vindicate that right – an "action" filed in court.  *See, e.g.*, *Peters v. Bentwater Yacht and Country Club, Ltd.*, 2013 WL 2422657, at *4 (S.D. Tex. June 3, 2013) ("the statute of limitations does not extinguish claims …, [it] operate[s] procedurally to bar the enforcement of a right.")  *Id.* at *5 (finding that while a

statute of limitations could prevent the judicial enforcement of the Defendant's rights, the Defendant could still use  non-judicial channels to enforce its contract).

As a practical matter, it does not matter whether the statute of limitations is an issue of arbitrability that the parties agreed to arbitrate when they incorporated the AAA Rules or a procedural gateway issue that is presumptively for the Arbitrator and not the Court.  Either way, the Court must compel arbitration.

## II.     THERE IS NO APPLICABLE STATUTE OF LIMITATIONS

Even if this Court were to consider Wior's requested relief, it would still result in the Court compelling arbitration of BellSouth's breach of contract claim because there is no statute of limitations applicable to this dispute.

### A.     The Statute of Limitations Applies only to "Actions"

Wior seeks to invoke Georgia's six-year statute of limitations for breach of contract actions.  O.C.G.A. 9-3-24 (relating to "[a]ll *actions* upon simple contracts in writing . . . .") (emphasis added).  As courts in other states have found when considering their own statutes of limitations, those statutes apply only to "actions" filed in a court and not to an arbitration proceeding.  *See, e.g., Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (Cal.App.2d Dist. 2009) (arbitration is not an action); *Lewiston Firefighters Ass'n v. City of Lewiston*, 354 A.2d 154, 167 (Me. 1976) ('[a]rbitration is not an action at law and the statute

14

[of limitation] is not, therefore, an automatic bar to the [f]irefighter's recovery'); *Skidmore, Owings & Merrill v. Conn. Gen. Life Ins. Co.*, 197 A2.d 83 (Conn. 1963) ('[a]rbitration is not a common law action, and the institution of arbitration proceedings is not the bringing of an action under any of our statutes of limitation').  The GAC recognizes this simple fact because it states that, where a party starts an arbitration on a claim that would have been barred had it been brought in court, there are circumstances under which a court or arbitrator may have discretion to apply (or refuse to apply) the limitations period.  O.C.G.A. § 9-9-5.  If the normal state law statute of limitations applied generally to arbitration proceedings, there would be no need for Section 5 of the GAC.  Notably, the New York Arbitration Code has a provision that is very similar to Georgia's, but most other states do not.  *See* NY CPLR 7502(c).

### B.    The GAC is Preempted by the FAA and AAA Rules

The FAA rather than the GAC applies in this instance because the parties have an international arbitration agreement that is governed by the New York Convention, Chapter II of the FAA, and the AAA Rules.  The New York Convention applies because Wior is an Argentine national while BellSouth is a Georgia corporation.  *See* 9 U.S.C. § 202.  Thus, pursuant to Section 203 of the FAA, both this Court "action" and the arbitration "proceeding" commenced by

15

BellSouth arise under federal law.  9 U.S.C. § 203 ("An *action* or *proceeding* falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States.") (emphasis added).  Moreover, while the substance of the Transition Agreement is governed by Georgia law, the parties expressly contracted for the AAA Rules to govern the arbitration procedure.  *See* Complaint, Ex. C at § 14.  Notably, neither the FAA nor the AAA Rules contains any statute of limitations.[4]

Wior attempts to get around this problem by arguing that the FAA does not apply here because the choice of law provision in the Transition Agreement states that "[t]his Agreement shall be construed under and governed by the laws of the State of Georgia."  *See* Petitioner's Memorandum of Law in Support of His Motion for Stay of Arbitration and Declaratory Relief at p. 5.  Wior's position is that "under Georgia law, if a contract's choice of law provision states that Georgia law governs the contract, the Georgia Arbitration Code ("GAC")—and not the FAA— governs any arbitration arising out of that contract."  *Id.*  Petitioner has misinterpreted Georgia law and the FAA.  Specifically, the choice of law clause in the Transition Agreement pertains to substantive issues only, while procedural

---

[4] *See* the AAA Rules, Exhibit D to the Petitioner's Complaint.

16

issues related to the arbitration are governed by the FAA and AAA Rules.  *See Preston v. Ferrer*, 552 U.S. 346, 362 (2008).

In *Preston*, the parties' agreement had a choice of law clause calling for the application of California law, which in turn, had a provision granting exclusive jurisdiction over certain disputes to the California Labor Commissioner.  *Id.* at 351. The agreement had a separate, broad-form arbitration clause that called for arbitration pursuant to the AAA Rules.   Relying on its prior precedent in *Mastrobuono*, the Supreme Court held that "the best way to harmonize" a choice of law clause calling for the application of state law that had "special rules limiting the authority of the arbitrators" with a broad arbitration clause calling for arbitration under the AAA Rules was to hold that the choice of law clause would apply to "substantive principles", but not to special state law rules limiting the arbitrator's authority.  *Id.* at 362.

*Preston* clearly controls here:  BellSouth and Wior entered into a broad form arbitration agreement calling for arbitration under the AAA Rules, which is found in a severance agreement that has a Georgia choice of law clause.  The GAC has a special rule limiting the arbitrator's authority to decide the statute of limitations defense and, potentially, limiting the arbitrator's authority to hear a claim at all if the court finds it to be time-barred.   And, under Georgia law, the statute of

limitations is procedural rather than substantive.  *See, e.g., Hunter et al. v. Johnson*, 376 S.E.2d 371, 372 n.1 (Ga. 1989) ("Statutes of limitation look only to the remedy and so are procedural."); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013) ("Under Georgia law … statutes of limitations are considered procedural.") (internal citations omitted).  Thus, there is no merit to Wior's claim that the GAC applies to this dispute.

### C.     Wior's Motion Relies on Cases that are Inapplicable

Without citing *Preston* or *Mastrobuono*, Wior relies on two inapplicable authorities to support his flawed argument.  The first is the U.S. Supreme Court's decision in *Volt Information Sciences Inc. v. Board Of Trustees of Leland Stanford Jr. University*, 489 U.S. 468 (1989).  Wior cites *Volt* for the proposition that the inclusion of a California choice of law clause incorporated into the arbitration agreement procedural provisions of the California Arbitration Code that limited the arbitrator's authority.   This is precisely the argument the unsuccessful party advanced in *Preston*, however, and the Supreme Court rejected it.

Specifically, the Court in *Preston* easily distinguished its prior decision in *Volt* on the grounds that *Volt* never "addressed the import of the contract's incorporation by reference of privately promulgated arbitration rules."  *Preston* at 361.  Thus, while the arbitration agreement in *Volt* incorporated rules promulgated

by the AAA, Volt never argued that incorporation of those rules "trumped" the choice-of-law clause contained elsewhere in the contract.  *Id.*  As the *Preston* Court observed, the Supreme Court *was* called upon to address precisely that issue in both *Mastrobuono* and *Preston,* where it held that the institutional rules trump procedural rules found in state law:

> "In *Mastrobuono*, we reached that open question while interpreting a contract with both a New York choice-of-law clause and a clause providing for arbitration in accordance with the rules of the National Association of Securities Dealers (NASD) … The 'best way to harmonize' the two clauses, we held, was to read the choice-of-law clause 'to encompass substantive principles that New York courts would apply, but not to include [New York's] special rules limiting the authority of arbitrators.'"

*Id.* citing to *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995).  Thus, the relevant authorities for purposes of this case are *Preston* and *Mastrobuono*; *Volt* has no application here; and the inclusion of a Georgia choice of law clause requires the application of Georgia substantive law and not any rules found in the GAC, procedural or otherwise, that would operate to limit the authority of the Arbitrator.

Plaintiff next relies on the Georgia Court of Appeals' decision in *Panhandle Fire Prot., Inc. v. Batson Cook Co.*, 653 S.E.2d 802, which was decided prior to *Preston*, for the proposition that a Georgia state court has held that the inclusion of a Georgia choice of law provision incorporates the GAC.  The Court in *Panhandle*,

like the Court in *Volt*, did not consider the impact of the incorporation of institutional rules. Thus, *Panhandle* is distinguished on the same grounds as *Volt*.[5]

*Volt* and *Panhandle* are further distinguishable on the grounds that both cases related to domestic arbitrations and were brought in state courts.  In contrast, this case is subject to the New York Convention and, therefore, under Section 203 of the FAA, it arises under federal law.  9 U.S.C. § 203.

### D.   The Second Circuit has Addressed Wior's Argument and Rejected it for the Equivalent New York Statute

Finally, while no federal court in the Eleventh Circuit has addressed precisely the issue presented here, the Second Circuit has addressed a similar argument that a New York choice of law clause was sufficient evidence that the parties intended to permit recourse to the New York equivalent of Section 5 of the GAC.  *See Bechtel do Brasil Construcoes Ltda v. UEG Araucaria Ltda.*, 638 F.3d 150 (2d Cir. 2011).  There, the arbitration agreement incorporated the arbitration rules of the International Chamber of Commerce (the "ICC Rules"), which have provisions similar to the relevant provision of the AAA Rules, and the underlying agreement included a New York choice of law clause.  *Id.*  Because New York's CPLR Section 7502(b), relating to statutes of limitations in arbitration, is similar to

---

[5] Of course, if there were a conflict between the US Supreme Court's decision in *Preston* and the Georgia Court of Appeals' decision in *Panhandle*, this Court would be required to follow *Preston*.

Section 5(a) of the GAC,[6] the Respondent in that arbitration made essentially the same argument Wior makes here:  that the state arbitration code applied and gave it the right to present its statute of limitations defense to the court.

Specifically, the Respondent in the *Bechtel* arbitration argued that the parties had modified the ICC Rules to call for the application of the New York Arbitration Code because the choice of law clause stated that the "arbitration proceeding . . . and the validity, effect and interpretation of this agreement to arbitrate shall be governed by the laws of the State of New York," and "[t]he law governing the procedure and administration of any arbitration . . . is the law of the State of New York."  *Id.* At 152.  The Second Circuit found that this language – which is much more explicit about procedural rules than the language in the choice of law clause at issue here -- "could be read to incorporate CPLR §7502(b)," but that arguably it did not, because "the Supreme Court has recognized [that] general choice-of-law clauses. . . may be read to address only 'substantive rights and obligations, and not

---

[6] Section 7502(b) of the CPLR states: "Limitation of time. If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court…."  CPLR §7502(b).
Section 5(a) of the GAC states: "If a claim sought to be arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration or to vacate the award...."
O.C.G.A. 9-9-5(a).

the State's allocation of power between alternative tribunals.'"   *Id*. at 157-58,

citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 (1995)

(quotations omitted).   Thus, relying on the general presumption in favor of

arbitration, the Second Circuit resolved the ambiguity in favor of arbitration.

The Southern District of New York followed *Bechtel* in *Alfa Laval U.S.

Treasury Inc. v. Natational Union Fire Insurance Co. of Pittsburgh*, 857 F. Supp.

2d 404 (S.D.N.Y. 2012).   In *Alfa Laval*, the arbitration agreement was much

narrower than the one at issue here or the *Bechtel* agreement, but the choice of law

clause was narrower, too.   The Court nevertheless held that the arbitration clause

was broad enough to encompass the statute of limitations defense and that the

choice of law clause – which stated "matters of interpretation and/or construction .

. . are to be interpreted and construed under New York law" – was insufficient to

incorporate NY CPLR § 7502(c).   *Id.* at 417.

Here, the arbitration agreement is as broad as the *Bechtel* agreement while

the choice of law clause is as narrow as the one in *Alfa Laval*.   Thus, there is no

ambiguity here and this Court need not rely on the general presumption in favor of

arbitration in order to grant the motion to compel.   To the extent there is any

ambiguity, however, this Court should adopt the reasoning of the Second Circuit

and the Southern District of New York and hold that the Georgia choice of law

clause found in the Transition Agreement is insufficient evidence of the parties' intention to incorporate Section 5 of the GAC into their arbitration agreement.

## III.  EVEN IF THE GEORGIA ARBITRATION CODE APPLIES, THE COURT SHOULD EXERCISE ITS DISCRETION UNDER O.C.G.A § 9-9-5 TO DISREGARD THE STATUTE OF LIMITATIONS

Assuming for the sake of argument that the GAC applies to this dispute (which it does not), this Court should refuse to exercise its discretion to apply the statute of limitations under the circumstances of this case.  The policies underlying the statute of limitations -- avoiding undue surprise, and enabling investigation and collection of evidence while the matter is fresh -- are not implicated here.  *See, e.g. Bagwell v. City of Atlanta*, 109 F.R.D. 290, 291 (N.D. Ga. 1985); *Ashcroft v. Randel*, 391 F. Supp. 2d 1214, 1226 (N.D. Ga. 2005) (internal citations omitted). The parties have a complete record of the Argentina action, so the evidence demonstrating Wior's breaches of the Transition Agreement are clear and there is no danger that relevant witnesses will be unavailable or that memories will have faded.

Further, Wior has unclean hands.  Wior alleges that BellSouth "sought two bites of the apple" by defending itself in Argentina and now pursuing vindication of its rights in arbitration.  BellSouth negotiated in good faith to reach final settlement terms with Wior for his severance from the company.  Both Wior and

BellSouth willingly signed the Transition and Termination Agreements.  The terms were generous, fair, and intended to be final.  After receiving approximately $5 million dollars in severance, Wior pursued more money from BellSouth via litigation in Argentina in violation of his executed release, covenant not to sue, and arbitration agreement.  Wior was able to file that action based on a technicality that he created by claiming concern for his and his family's safety and refusing to register the Termination Agreement.  If Wior felt that more compensation was owed to him, the time for him and his lawyer to bring that up was at the negotiating table before signing agreements that contained waivers and covenants not to sue.  He had many opportunities to do that during his multiple trips to Atlanta for negotiations.  Alternatively, he could have pursued arbitration against BellSouth in Georgia pursuant to his contractual obligation, which he did not.

It is therefore Wior who attempted a second bite of the apple by insisting that BellSouth pay his $5 million severance (all but approximately $23,000 of which was paid into his U.S. bank account), and then, without returning the money he received pursuant to purportedly invalid severance agreements, pursuing his former employer for more money in Argentina.  Wior convinced the Argentine Courts that both the agreements are unenforceable under Argentine labor law and has been awarded $8.42 million more in severance.  This award is almost entirely

based on the Argentine Courts' refusal to enforce the Transition Agreement's express terms, because of the technicality that Wior intentionally created by refusing to register the Termination Agreement, and a failure to understand how to value stock options as the Courts failed to subtract the strike price Wior would have been required to pay to exercise the additional awarded options.

Meanwhile, BellSouth is taking its first bite of the apple in the correct forum, before an arbitral tribunal. Of course Wior wants to prevent this. He should not be rewarded any further by allowing him to take advantage of a statute of limitation defense.

## CONCLUSION

This Court should deny Petitioner's Motion; grant BellSouth's Cross-Motion; and enter an Order staying this litigation and compelling arbitration.

Respectfully submitted this 19th day of October, 2015.

/s/ David L. Balser

David Lewis Balser
Georgia Bar No. 035835
Brian Avery White
Georgia Bar No. 752955
Sara Sargeantson Burns
Georgia Bar No. 938848
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia  30309
Tel.: 404-572-4600

Fax: (404) 572-5100
dbalser@kslaw.com
bwhite@kslaw.com
sburns@kslaw.com

-and-

Leticia D. Alfonso
Georgia Bar No. 009275
AT&T SERVICES, INC.
Suite 4300
675 West Peachtree Street, N.W.
Atlanta, Georgia  30308
Tel.: (404) 927-8859
Fax: (404) 927-7167
la4469@att.com

ATTORNEYS FOR RESPONDENT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MAURICIO WIOR,** | ) |
| | ) |
|     **Petitioner,** | ) |
| | )   **CIVIL ACTION** |
| **v.** | )   **NO. 1:15-cv-02375-ELR** |
| | ) |
| **BELLSOUTH CORPORATION,** | ) |
| | ) |
|     **Respondent.** | ) |
| | ) |

## LR 5.1(C) CERTIFICATE

I hereby certify, pursuant to LR 5.1(C), that this document was prepared in

Times New Roman font, 14-point, in accordance with LR 5.1(C).

This 19th day of October, 2015.


                                        _/s/ David L. Balser_____
                                        David L. Balser

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **MAURICIO WIOR,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) **CIVIL ACTION** |
| **v.** | ) **NO. 1:15-cv-02375-ELR** |
| | ) |
| **BELLSOUTH CORPORATION,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 19, 2015, I electronically filed **RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR STAY OF ARBITRATION AND IN SUPPORT OF CROSS MOTION TO STAY LITIGATION AND COMPEL ARBITRATION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> Jeffrey W. Willis
> ROGERS & HARDIN LLP
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
> jwillis@rh-law.com

> */s/ David L. Balser*
> David L. Balser

> ATTORNEY FOR RESPONDENT

28